**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THOMAS P. FITZGERALD,

    Plaintiff,

v.

                                        Civil No. 08-10784
                                        Hon. Gerald E. Rosen

H&R BLOCK FINANCIAL ADVISORS, INC.
And H&R BLOCK, INC.,

    Defendants.

_____/

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO CONFIRM ARBITRATION AWARD
AND DENYING DEFENDANTS' MOTION TO VACATE ARBITRATION AWARD**

At session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    June 11, 2008

PRESENT:   Honorable Gerald E. Rosen
                     United States District Judge

### I. INTRODUCTION

Plaintiff Thomas P. Fitzgerald commenced this action pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, et seq., on February 25, 2008 seeking to confirm an arbitration award (the "Award") entered against Defendant H&R Block Financial Advisors, Inc. ("HRBFA") and H&R Block, Inc. in the amount of $3,962,846.91. This Award was rendered by a Dispute Resolution Panel (the "Panel") of the Financial Services Regulatory Authority, Inc. ("FINRA," formerly the National Association of Securities Dealers, "NASD") on February 20, 2008. The Award included compensatory damages, interest, and attorney fees. However, as permitted under the

1

NASD Code of Arbitration, which is applicable in FINRA cases filed prior to April 16, 2007, the Panel provided no reasoned opinion for its decision. See NASD Code of Arbitration § 10330, http://www.finra.org/web/groups/med_arb/documents/mediation_arbitration/p018653.pdf.

This matter is now before the Court on Plaintiff's motion to confirm the award and Defendants' cross-motion to vacate the award. Having reviewed and considered the parties' respective motions and briefs, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Plaintiff Thomas Fitzgerald, a licensed and practicing attorney, was hired as "General Counsel" by OLDE Discount Corporation ("OLDE"), the predecessor-in-interest of Defendant HRBFA,[1] on March 6, 1995. His employment was terminated on April 26, 2004. At the time of his termination, Plaintiff held the position of Executive Vice President and Chief Operating Officer of HRBFA.

During the course of his employment, a dispute arose concerning Plaintiff's refusal to execute an employment agreement that was being required for each senior executive employee in 2003. Plaintiff's refusal was based in part on a more restrictive than usual non-compete provision in the agreement and his demand for special treatment regarding accelerated vesting of stock options. Due to these issues and H&R Block's desire to restructure HRBFA's

---

[1] OLDE became HRBFA following the acquisition of OLDE's parent corporation by Defendant H&R Block, Inc. H&R Block, Inc. is a holding company with a number of subsidiaries that provide a wide range of financial services including services related to securities, mortgages, accounting, and tax preparation.

organizational scheme, discussions with Plaintiff over an orderly termination of his employment began in August 2003.

According to Plaintiff, the proposed agreement that he refused to sign was sent to him under cover of a memorandum printed on H&R Block, Inc. letterhead ostensibly from the Senior Vice President for Human Resources of H&R Block which was signed by Stephanie Otto. Otto, however, was at the time employed exclusively by HRB Management. Plaintiff tried to negotiate the terms of the proposed agreement directly with Mark Ernst, the President, CEO and Chairman of parent company H&R Block. Ernst is also the President of HRB Management, the administrator of the H&R Block Severance Plan (the "Plan").

When by February 2004 a resolution was still not reached between Plaintiff and his employer concerning the proposed employment agreement, Plaintiff was informed that it was time to bring an end to the relationship, and on April 26, 2004, Plaintiff's employment with HRBFA was terminated.

During the course of his employment with HRBFA, Plaintiff signed a Form U-4 titled "Uniform Application for Securities Industry Registration" to become registered as an "Associated Person" of HRBFA. Form U-4 is the standard form that is required for all securities broker-dealers to register their representatives or "associated persons" with the securities' industry's self-regulatory organizations ("SROs"), the NASD (now the FINRA) and the NYSE. Form U-4 contains a pre-dispute arbitration clause which requires that disputes between an employee and a member organization be arbitrated.

On May 2, 2005, Plaintiff initiated arbitration against HRBFA and H&R Block before the dispute resolution division of the FINRA. In his Statement of Claim in the arbitration, Plaintiff

asserted claims of breach of contract, fraud, illegal retaliation, civil extortion and a number of ERISA violations, all arising out of his employment and termination of his employment, and seeking damages in excess of $3 million. Pursuant to the arbitration provision in Plaintiff's Form U-4 and the NASD rules, Plaintiff and HRBFA were required to arbitrate these claims. Although H&R Block was not a member of the NASD and not a party to any arbitration agreement with Plaintiff, it voluntarily agreed to arbitrate Plaintiff's claims and submitted a Uniform Submission Agreement to the NASD Dispute Resolution division to that effect.

In their response to Plaintiff's Statement of Claim, HRBFA and H&R Block stated that some of the compensation and benefits Plaintiff was seeking were only obtainable from the H&R Block Severance Plan which is administered by HRB Management. Respondents further stated that the Plan and HRB Management are not FINRA members and are not parties to any agreement to arbitrate with Plaintiff. Plaintiff thereafter filed an Amended and Restated Statement of Claim seeking to add the Plan and Plan Administrator HRB Management as parties to the arbitration. By a letter dated October 10, 2005, HRB Management and the Plan, acting through the same counsel that represents H&R Block and HRBFA, advised FINRA Dispute Resolution that they declined to voluntarily submit to the arbitration of Plaintiff's claims.

Upon receipt of this declaration, on October 11, 2005, the FINRA sent Plaintiff's attorney a letter stating that the FINRA did not have jurisdiction over HRB Management or the Plan. Thereafter, on December 15, 2005, Plaintiff filed a Petition in this Court requesting that the Court enter an order and judgment compelling HRB Management and the Plan to arbitrate Plaintiff's ERISA claims in the same arbitration forum with its affiliates, HRBFA and H&R Block. In an opinion dated July 13, 2006 this Court denied Plaintiff's motion.

Plaintiff went ahead with arbitration against the original two defendants, HRBFA and H&R Block, but before arbitration began, HRBFA and H&R Block argued that, since this Court had held that the Plan and HRB Management could not be compelled to arbitrate, the Plaintiff's ERISA claims could not be heard by the Panel. Plaintiff filed a motion with this Court to clarify this Court's earlier decision. On February 26, 2007 this Court ruled that its July 13, 2006 decision did not preclude the Panel from hearing the ERISA claims.

Thereafter the parties underwent arbitration. At the hearing, five witnesses testified. Plaintiff also introduced approximately 55 exhibits and Defendants introduced approximately 74 exhibits. Plaintiff presented one expert witness, Professor Maria O'Brien Hylton of Boston University School of Law, an expert in the field of ERISA law. She testified in support of Plaintiff's ERISA claims against Defendants. Defendants offered no expert witnesses. The parties completed arbitration and the Panel awarded Plaintiff $3,962,846.91 in compensatory damages, interest, and attorney fees. On February 25, 2008 Plaintiff filed the present Application with this court seeking to confirm the Award. HRBFA and H&R Block responded with a motion to vacate the Award.

### III. DISCUSSION

**A. Standards Governing Plaintiff's Application and Defendants' Motion**

Plaintiff's Application to confirm the Award is statutorily authorized by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, and, as provided in 9 U.S.C. § 6, is heard by this Court in the same manner as a motion. "The FAA expresses a presumption that arbitration awards will be confirmed." Nationwide Mutual Insurance Company v. Home Insurance Company, 429 F.3d 640, 643 (6th Cir. 2005). Only if arbitration awards are strictly enforced will the public policy

favoring dispute resolution be upheld. "When courts are called on to review an arbitrator's decision, the review is very narrow; [it is] one of the narrowest standards of judicial review in all of American jurisprudence." Ulh v. Komatsu Forklift Co., 512 F.3d 294, 305 (6th Cir. 2008) (quoting Lattimer-Stevens Co. v. United Steelworkers, 913 F.2d 1166, 1169 (6th Cir.1990)). Recently, in Hall Street Associates, L.L.C. v. Mattel, Inc., __ U.S. __, 128 S. Ct. 1396 (2008), the Supreme Court stated that,

> [o]n application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.' There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies.

Id. at 1405 (quoting 9 U.S.C. § 9).

9 U.S.C. § 10 lists four grounds for vacating an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means.
(2) Where there was evident partiality or corruption in the arbitrators, or either of them.
(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 11 also lists three grounds for modifying an arbitration award:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

In addition to these statutory grounds, a court may vacate an award if the arbitrators have "manifestly disregarded the law." Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir.), cert.

denied 531 U.S. 878 (2000). A court may find that the law has been manifestly disregarded if: "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed the legal principle." Dawahare, 210 F.3d at 669 (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros, 70 F.3d 418, 421 (6th Cir.1995)). As the Supreme Court concluded in Mattel, supra,

> [I]t makes more sense to see the three provisions, §§ 9-11 [of 9 U.S.C.], as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process . . . and bring arbitration theory to grief in the post-arbitration process.

128 S. Ct. at 1405 (quoting Kyocera Corp. v. Prudential-Bache Trade Services, 341 F.3d 987, 998 (9th Cir. 2003)).

Defendants make no claim that the Panel violated any of the statutory provisions; rather they base their motion to vacate entirely on the premise that the Panel manifestly disregarded the law.

**B. The FINRA Arbitration Panel Did not Manifestly Disregard The Law**

As Plaintiff points out in his Response, the Panel provided no "discussion, explanation, reason, or any indication whatsoever of what evidence the arbitrators relied upon, how they arrived at their decision, or what claims the Award is based on." (See Plaintiff's Response, at 2). Since "the party moving to vacate the award bears a 'high' burden of proof to avoid 'summary confirmation' of the award," Terk Technologies Corp. v. Dockery, 86 F.Supp.2d 706, 709 (E.D. Mich. 2000), Defendants' contention is, *ab initio*, confronted by an all but insurmountable obstacle: the Panel did not provide any reasoned analysis for their decision from which Defendants could offer evidence that the Panel disregarded the law. As the court in Dawahare

7

noted, "[if] the [arbitration panel] chooses not to [explain their decision ], it is all but impossible to determine whether they acted with manifest disregard of the law." Dawahare, 210 F.3d at 669. The absence of any evidence of the Panel's decision-making process leaves nothing for this Court to do but speculate as to what the Panel may have been thinking when they made their decision, a policy clearly contrary to the interests of justice. See e.g., Electronic Data Systems Corp. V. Donelson, 473 F.3d 684 (6th Cir. 2007).

The only manner in which this Court could possibly determine that the Panel manifestly disregarded the law is if, from an analysis of the transcript of the arbitration proceeding and the evidence provided to the Panel, absolutely no rational means could be determined by which the Panel may have come to its decision. If any such a path to the Award may be forged, this Court must affirm the Panel's decision. Merrill Lynch, Pierce, Fenner & Smith, Inc. V. Jaros, 70 F.3d 418, 421 (6th Cir. 1995). As the Supreme Court explained in Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504 (2001), so long as "an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." Id. at 509. Thus, even errors in the interpretation and application of the law will not be enough to overturn an arbitration panel's decision. The Court will now address the claims that Plaintiff and Defendants presented to the Panel.

1. The Arbitration Panel May Have Awarded Damages to Plaintiff Against HRBFA and H&R Block on the ERISA Claims.

The question before the court is whether the arbitration panel manifestly disregarded the law when it awarded Plaintiff almost $4 million in damages. Since the Panel provided no written

findings on which it based its claims, the Court will determine if a rational means exists by which the Panel may have come to its decision. The Panel may have based its decision on one or all of the claims. Therefore, this Court will look at each claim *seriatim*.

The Court finds that the Panel may have properly based its decision in whole or in part or on Plaintiff's ERISA claims against HRBFA and H&R Block. Precedent exists in a number of the federal circuits -- including the Sixth Circuit -- for holding an employer to be the proper party to an ERISA benefits claim. See Sweet v. Consolidated Aluminum Corp., 913 F.2d 268, 272 (6th Cir. 1990); Muscemi v. Schwegmann Giant Super Markets, Inc., et al, 332 F.3d 339 (5th Cir. 2003); Mein v. Carus Corp., 241 F.3d 581 (7th Cir. 2001). In all of these cases, in order to determine if the employer was a proper defendant, courts have looked to the level of control the employer had over the retirement plan. Their analyses include factors such as the employer's authority to decide the specific terms of the plan and its ability to determine requirements of membership to the plan (See Rosen v. TR, Inc., 979 F.2d 191, 192 (11th Cir. 1992); Adamo v. Anchor Hocking Corp., 720 F. Supp. 491, 498 (W.D. Pa. 1989)(employer controls and influences plan decisions); DuBois v. Wal-Mart Stores, Inc., 2005 WL 1801977 at *2 (W.D. La. July 28, 2005) (employer made decision to deny benefits); Liston v. Unum Corp Officer Severance Plan, 2001 WL 761228 at *5 (D. Me. July 6, 2001) (benefits are paid out of employer's general assets); Hogan v. Metromail, 107 F. Supp. 2d 459, 475 (S.D.N.Y. 2000) (employer made final benefits decision)) and whether or not the employer funds the plan (See Harrison v. Digital Health Plan, 183 F.3d 1235, 1241 (11th Cir. 1999)(self-funded plan); Mein, 241 F.3d at 585 and Neuma, Inc. V. AMP, Inc., 259 F.3d 864, 872 n.4 (7th Cir. 2001)(plan was unfunded); Osbun v. Auburn Foundry, Inc., 2004 WL 2402836, at n.5 (N.D. Ind. 2004) (plan

9

funded by employer); Muscemi, 332 F.3d 339 (unfunded plan); Slaughter v. AT&T Information Systems, Inc., 905 F.2d 92 (5th Cir. 1990)(plan unfunded; benefits paid by employer). In cases in which a high level of control is found, courts have gone so far as to hold that it is unnecessary for Plaintiff to name the plan or plan administrator as a defendant; rather, the Plaintiff may treat the employer as the *de facto* plan administrator. Law v. Ernst & Young, 956 F.2d 364 (1st Cir. 1992) (employer is proper party to benefits claim regardless of who is named as plan administrator in the plan document).

In the present case, H&R Block both controls the plan administrator, HRB Management, and provides the funding for the Plan. Furthermore, Mark Ernst, the President, CEO, and Chairman of H&R Block, is also the President of HRB Management which is the administrator of the Plan. When an employer exercises a degree of authority over a benefits plan equivalent to HRBFA and H&R Block's, there is ample authority that the employer may be held as a proper party to the ERISA claims. Here, there is no evidence that the arbitrators refused to heed this legal principle.

Evidence was presented at the arbitration hearing which established that HRBFA and H&R Block exercised substantial control over the Plan. At the arbitration hearing, Professor Hylton testified that HRB Management was a "do nothing administrator." (See Plaintiff's Response, Tx. Nov. 6, p. 319, ll. 19-25). Her conclusion was based in part on the fact that Mark Ernst, the President, CEO and Chairman of H&R Block as well as the President of HRB Management, was unaware that HRB Management was named as the Plan's administrator under the Plan (See Plaintiff's Response, Tx., Nov. 7, p. 469, l. 19) and that Tammy Seratti, H&R Block's Senior Vice President of Human Resources, managed severance benefits claims through

the H&R Block Human Resource Department. (See Plaintiff's Response, Tx. Nov. 7, p. 512, ll. 11-19). Dave Andrew, General Counsel of HRBFA, testified that the Board of Directors of H&R Block, HRB Management, had ultimate responsibility for determining Plan benefits. (See Plaintiff's Response, Tx., Nov. 9, p. 887, ll. 14-16). Brian Nygaard, former Chief Executive Officer of HRBFA, testified that whenever HRBFA had severance plan issues, its Director of Human Resources "would then go to [H&R Block] and engage in dialogue with those people in [H&R Block] who would be most engaged in a severance process." (See Plaintiff's Response, Tx. Nov. 6, pp. 194, l. 24-195, l. 2). Nygaard also testified that he developed a severance package for Plaintiff after a February 2004 meeting with Plaintiff and that the only person he conferred with about Plaintiff's severance plan was Seratti, Senior Vice President of H&R Block, who approved the plan. (See Plaintiff's Response, Tx. Nov. 6, pp.180 l. 22-183, l. 23). Lastly, evidence was presented at the hearing which showed that the Plan was unfunded and that HRBFA pays the severance benefits. (See Plaintiff's Response, Claimant's Ex. 29, p. HR 450 ¶ 12.

Defendants argue that the court in May v. Roadway Express, 813 F. Supp. 1280 (E.D. Mich. 1993), ruled that an employer is not a proper party to an employee's ERISA claim. However, May only ruled that the employer was not a proper party when its parent company is the administrator of the plan, which is not the case here. Also, the employer in May did not have any significant control of the administration of the plan. Moreover, even if the court in May would have ruled in direct contradiction to the cases cited above, this would serve only to defeat the first element of manifest disregard of the law: there would be no clearly established legal principle. Therefore, the Court finds that the Panel did not manifestly disregard the law in

11

deeming H&R Block and HRBFA to be proper parties to Plaintiff's ERISA claims.

The next issue is whether Plaintiff exhausted his administrative remedies before he filed his claim in arbitration. Burds v. Union Pacific Corp., 223 F.3d 814, 817 (6th Cir. 2000) (requiring exhaustion of administrative remedies for claims under ERISA § 510); Miller v. Metro Life, 925 F.2d 979, 986 (6th Cir. 1991) (ERISA requires plaintiff to exhaust his administrative remedies before filing suit); Baxter v. C.A. Muer, 941 F.2d 451, 454 (6th Cir. 1991) (benefits claim dismissed because plaintiff did not exhaust his administrative remedies before filing suit). However, as Plaintiff correctly argues, the Sixth Circuit has held that, under ERISA, a Plaintiff need not exhaust his administrative remedies when to do so would prove futile. Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 419 (6th Cir. 1998). Evidence was presented at the hearing that Plaintiff had contacted Mark Ernst concerning his complaints about the severance plan. Plaintiff contends that at the time of his termination, he repeatedly tried to obtain desired severance terms and that Defendants refused to grant them. Block's own attorneys informed Plaintiff's counsel that if the two parties could not come to an agreement, H&R Block would take the position that Plaintiff was not entitled to any benefits. The Court, therefore, finds that the Panel, presented with these facts, properly determined that, under Sixth Circuit law, Plaintiff was not required to exhaust his administrative remedies.

Next, the Court finds that sufficient evidence was presented at the arbitration hearing for the Panel to determine that Defendants had violated ERISA § 510. Section 510 prohibits discrimination against an ERISA plan participant and interference with protected rights under an ERISA plan. 29 U.S.C. § 1140. Two types of conduct are prohibited: (1) adverse actions in retaliation against a participant because of assertion of ERISA rights, and (2) interference with

the attainment of ERISA rights. Mattei v. Mattei, 126 F.3d 794, 797 (6th Cir.), cert. denied 523 U.S. 1120 (1997). Even if the court finds that the conduct was in part motivated by business reasons, this does not preclude a separate finding that the conduct was also motivated by improper reasons and thus in violation of ERISA. Shahid v. Ford Motor Co., 76 F.3d 1404, 1411 (6th Cir. 1996).

At the arbitration hearing, Plaintiff presented evidence that his refusal to sign a two-year non-compete clause was based in part on his objection to a non-compete clause which was more onerous than other non-compete clauses Defendants had included in other severance plans with other employees. In Cirulus v. UNUM Corp., 321 F.3d 1010 (10th Cir. 2003), the court determined that the defendant had violated § 510 of ERISA when it refused severance benefits to an employee who refused to sign a non-solicitation provision. Professor Hylton testified that the selective amending of Plaintiff's severance package to include a non-compete clause that was substantially more oppressive than those contained in other similar severance agreements which Defendants had offered to other employees was an "illegal plan amendment." (See Plaintiff's Response, Tx., Nov. 6, pp. 335, l. 22-336, l. 3). Based on the above evidence and testimony, the Court finds that the Panel could have determined that Defendants' actions were a violation of § 510 of ERISA.

Similarly, this Court finds that the Panel could have determined that Defendants' actions amounted to breach of fiduciary duty in violation of § 409 of ERISA. ERISA authorizes civil actions for breach of fiduciary duty by individual plan participants directly against any plan fiduciary. Varity Corp. V. Howe, 516 U.S. 489, 512 (1996). ERISA defines a fiduciary as a person or entity which

> (i) . . . exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) . . . renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) . . . has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Based on the fact that HRBFA and H&R Block exercised such great authority over the administration of the Plan, the Court finds that the Panel may well have determined that Defendants were in a fiduciary position with regard to Plaintiff. The same evidence that was used to prove the violation of § 510 would also prove a violation of § 409 since, if HRBFA and H&R interfered with Plaintiff's ERISA rights it would necessarily constitute a breach of their fiduciary duty once the Panel had determined that Defendants were fiduciaries according to ERISA. These violations of fiduciary duty include (1) discriminating against Plaintiff by imposing a more onerous non-compete clause which was not "in accordance with the documents and instruments governing the plan," ERISA § 1104(a)(1)(D); (2) falsely interpreting the Plan, by telling Plaintiff that the non-compete provisions did not apply to him when in fact they did; (3) falsely representing that the provisions of the Employment Agreement were "applied uniformly" in order to induce Plaintiff to waive his rights under the Plan (as Plaintiff argues, "[i]t is a breach of fiduciary duty to lie to employees 'in order to induce them to surrender their benefits,'" see Plaintiff's Response, at 20 (quoting Baker v. Kingsly, 387 F.3d 649, 661 (7th Cir. 2005) )); (4) withholding stock options that were previously "guaranteed" in retaliation for Plaintiff's refusal to waive his rights under the Plan; and (5) terminating Plaintiff's employment for his insistence on his ERISA rights by his refusal to sign the Employment Agreement which would have waived his rights under the Severance Plan. Any one of these allegations, if true,

14

would establish that Defendants were acting in favor of their own self-interest and against the interests of someone with whom they had a fiduciary relationship. Thus, the Court finds that the Panel could have found that Defendants breached § 409 of ERISA.

The Court next finds that the Panel could have granted Plaintiff a monetary award on his ERISA claims. First, under a direct benefits claim, 29 U.S.C. § 1132(a)(1)(B), or a claim under § 510 of ERISA, Plaintiff could recover monetary damages if the Panel determined that Plaintiff had been denied benefits that were rightfully his. Admittedly, the law in this area is not well-settled. For example, in Eichorn v. AT&T Corp., 484 F.3d 644, 655 (3d Cir. 2007), the court determined that the "equitable" relief the plaintiff was seeking was in fact not equitable but in fact a disguised claim for compensatory damages and therefore not allowed. The subject of the controversy was pension benefits which the plaintiffs supposedly would have earned if they had remained employed. Id. at 648. However, the court went on to note that,

> [t]his is not to say that an ERISA plaintiff's demand for money necessarily requires the conclusion that the relief sought is not "equitable" within the meaning of the statute. The Supreme Court has explained that some forms of equitable relief -- such as constructive trusts, equitable liens, or accounting for the profits derived from wrongly held property-include the payment of money.

Id., at 655, n. 6.

From the Eichorn analysis, the Panel could have concluded that a monetary equivalent for specific shares of stock was restitution, or equitable relief, and thus was a permissible remedy under ERISA. The Panel could also have distinguished Plaintiff's claim from the claim in Alexander v. Bosch Automotive, 232 Fed. Appx. 491 (6th Cir. 2007). The court in Alexander held that restitution of a monetary amount was unavailable because the plaintiffs could not "identify particular traceable funds." Id. at 501. In the present case, however, Plaintiff identified

15

definite shares of stock which, under Plaintiff's theory, were wrongfully withheld by Defendants. Thus, the Panel's Award falls outside the impermissible remedies as defined in Alexander.  A monetary award is also available under § 409 of ERISA.  As with § 510, ERISA allows only equitable remedies for violations of § 409.  Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210-11 (2002).  However, in Great West, the Court held that equitable relief under ERISA includes equitable relief in the form of a constructive trust, i.e. the employer is holding property which rightfully belongs to the Plaintiff and he should be made to give up this property to the plaintiff. Id. at 213.  If the Panel determined that the stock Defendants had withheld from Plaintiff was rightfully Plaintiff's property, it could have decided that the stock should be returned to Plaintiff, and, since Plaintiff was no longer employed by the Defendants, awarded him the monetary value of the stock.  In any case, Defendants fail to prove that the Panel manifestly disregarded a clearly established legal principle; since the law in this area is open to reasonable debate, there was no clearly established legal principle for the Panel to disregard.  However, it appears from the evidence and transcript that the Panel at least tried to act in conformance with the law as it now exists.

Based on the foregoing analysis, the Court concludes that a monetary award under ERISA would not be a manifest disregard of the law.  Further, as the Court will next consider, it is not inconceivable that the Panel could have based the Award on any of Plaintiff's other claims against the Defendants.

2. <u>The Arbitration Panel May Have Awarded Damages to Plaintiff Against HRBFA and H&R Block Based on His Claims of Breach of Contract , Fraud, Illegal Retaliation, or Civil Extortion.</u>

Defendants' arguments in support of their motion to vacate based on manifest disregard of the law with regard to Plaintiff's claims of breach of contract, fraud, illegal retaliation, and civil extortion do not meet the high burden of proof which must be met to vacate an arbitration award. In essence, Defendants are using this Court as a sort of "court of appeals" to review the Panel's decision. In their motion, Defendants reargue the facts and legal issues of the case in an attempt to show how the Panel incorrectly applied the law. However, even if this were the case, it is not enough to vacate an arbitration award. In <u>Dawahare</u>, 210 F.3d at 669 (citing <u>M & C Corp., v. Erwin Behr GmbH & Co.</u>, 87 F.3d 844, 851 n. 3 (6th Cir. 1996)), the court noted that a mistake by an arbitration panel in the interpretation or application of the law is not a proper basis for vacating an arbitration award. Nowhere do Defendants present evidence which would support a finding that the applicable legal principle of any of the causes of action is a clearly defined and not subject to reasonable debate, or that the arbitrators refused to heed that legal principle. A mere misapplication of law is not enough to vacate an arbitration award. <u>Id.</u> at 851. Defendants repeatedly claim that each of Plaintiff's claims fail under Michigan law. Yet, nowhere in their motion or brief do Defendants point to a specific instance where the Panel manifestly disregarded the law as interpreted by the Michigan courts or the Sixth Circuit.

3. <u>The Arbitration Panel May Have Awarded Plaintiff His Attorney's Fees</u>

The Panel included attorney fees in its $3.962 million award and, as Plaintiff correctly asserts, Michigan law allows for recovery of attorney fees if authorized by a statute. MCL 600.2405(6). Attorney fees may also be awarded under ERISA, 29 U.S.C. § 1132(g)(1) in some

cases. In Sec'y of Dep't of Labor v. King, 775 F.2d 666, 669 (6th Cir. 1985), the court listed five factors which should be considered in deciding whether to award attorney fees in ERISA cases. They are:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

Id. at 669.

Plaintiff argues that Defendants acted in bad faith in delaying arbitration in order to drive up Plaintiff's fees. Plaintiff also argues that Defendants acted in bad faith in their interpretation of this Court's decision denying Plaintiff's motion to compel HRB Management and the Plan to arbitrate. If the Panel found these assertions valid, an award of attorney fees would not be a manifest disregard of the law. Since the Court can do nothing but speculate as to how the Panel determined the amount and availability of attorney fees, and since Plaintiff did provide evidence which could have given the Panel a basis upon which to award attorney fees, this Court affirms the Panel's award of attorney fees.

In sum, nowhere does the Court find "[p]roof that the panel 'consciously chose not to apply,'" the relevant law with respect to any of Plaintiff's claims heard by the Panel. Mitchell v. Ainbinder, 214 Fed. Appx. 565, 567 (6th Cir. 2007).

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Fitzgerald's application for confirmation of the FINRA arbitration Award (**Dkt. #1**) is GRANTED and HRBFA and H&R Block's motion to stay and to vacate the Award (**Dkt. #5**) is DENIED.

> s/Gerald E. Rosen
> Gerald E. Rosen
> United States District Judge

Dated: June 11, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 11, 2008, by electronic and/or ordinary mail.

> s/LaShawn R. Saulsberry
> Case Manager